**KEYSTONE ROOFING MFG. CO. v. SCU-TAN CO.**

District Court, S. D. New York.
Jan. 14, 1931.

Prindle, Bean & Mann, of New York City (Alan N. Mann, of New York City, of counsel), for the motion.

Moses & Nolte, of New York City (Joseph H. Milans, of Washington, D. C., of counsel), opposed.

WOOLSEY, District Judge.

This motion is denied.

I. This motion is made to dismiss a bill of complaint in a suit for infringement of United States patent No. 1,630,639 on the ground that the patent, which is incorporated in the bill by reference, is void on its face for want of novelty or invention and, hence, involves nonpatentable subject-matter.

The application for the patent by Thomas Milton Taylor, of York, Pa., was made on July 23, 1924, under serial No. 727,794.

The patent was granted May 3, 1927, and is United States patent No. 1,630,639.

The alleged invention is for an article of manufacture called a "drip sheet" made of oilproof or waterproof paper, preferably roofing paper, the purpose of which is to catch drippings of oil or grease from automobiles. Its preferred use is to protect the automobiles in the lower tier when one automobile is stowed above another in a freight car.

The specifications stated, inter alia:

"My invention relates to new and useful improvements in drip sheets and has for its principal object the provision of such a sheet which is adapted to be positioned beneath a motor vehicle to catch the drippings of oil or grease and to convey the same for deposit at a distant point or into a suitable receptacle.

"A further object of the invention resides in the provision of a flexible sheet which may be suspended beneath a motor vehicle in such a manner as to form a trough to receive the oils or grease and which may be inclined so as to allow the oils or grease to flow to the end of the same and to be discharged therefrom.

"Still another object of the invention consists in providing the sheet with means whereby it may be suspended in a freight car or the like, the corners of the sheet being reinforced to receive eyelets through which the securing means may pass and eyelets also preferably being provided intermediate the ends of the sheet for receiving securing means."

The claims are as follows:

"1. A drip sheet adapted to be suspended beneath a motor vehicle or the like in such a manner as to assume a trough-like form, said sheet being made of water or oil proof paper.

"2. A drip sheet adapted to be suspended beneath a motor vehicle or the like in such a manner as to assume a trough-like form, said sheet being made of readily flexible water or oil proof material, and the corners being folded to lie parallel with the sheet, the edges of the sheet between the folded corners being free of folds.

"3. A drip sheet adapted to be suspended beneath a motor vehicle or the like formed of paper treated with asphalt to make the same water or oil proof.

"4. A drip sheet adapted to be suspended beneath a motor vehicle or the like formed of water or oil proof papers and provided with reinforced perforated corners.

"5. A drip sheet adapted for temporary or emergency use formed of water or oil proof paper.

"6. As an article of manufacture, a drip sheet, formed of water or oil proof paper and having its corners folded to extend parallel with the body portion thereof, perforations being formed through the folded corners and aligned body portions."

II. In my opinion these claims are too broad. It seems to me that to grant such claims would involve the exclusion of others from many of the most obvious uses of pro-

tective coverings, and that the world would be full of difficulties if such exclusions from the simplest form of such age old uses of coverings should be sustained.

Though I do not think that there is here a situation which has any special novelty, there is, nevertheless, a new use of an old structure made of a kind of material obviously adapted to such use.

III. As I indicated on the argument, my own tendency would be to say that there is not invention here.

There is not any allegation of acquiescence on challenge, though there is an allegation of successful sales of the allegedly patentable article and of its considerable commercial use in the automotive trade.

There is not any showing of success in interference proceedings or citation of prior art in the Patent Office, as there was in Sheaffer Pen Co. v. Worth Featherweight Pen Co. (D. C.) 41 F.(2d) 820, which I decided last summer on a motion for preliminary injunction.

Such success on interference or over citation lends a dignity to the presumption of patentability, because it means that a quasi-judicial hearing has resulted in a decision in favor of the applicant for the patent.

In the absence of such hearings, we have a decision which is certainly entirely ex parte.

IV. But, nevertheless, some one in the Patent Office of assumed experience in such matters has passed on the basis of the plaintiff's claim. The basis, therefore, of a suit on a patent is not the raw stuff of a mere allegation of fact.

That is the rationale, as I understand it, of the many decisions in this circuit in which disapproval has been expressed of the dismissal of a bill of complaint in a patent suit on a demurrer, or its equivalent, a motion to dismiss.

The latest case cited to me is Frank v. Western Electric Co., 24 F.(2d) 642 (C. C. A. 2), in which the bill had been dismissed on motion after the answer was filed. The dismissal in the District Court which was based on the ground of obvious lack of invention was reversed. Judge Manton held that in order to justify such a dismissal certainty of nonpatentability beyond a reasonable doubt must be found. See 24 F.(2d) 642, at page 643.

Whether due to my comparative inexperience in patent cases or not, I do not know, but I feel a reasonable doubt here.

The article here patented may on plenary trial be shown to be a simple and useful advance over the prior art of covering objects. Plenary proofs may develop unexpectable aspects of it.

If the rule in favor of a patent were not so strict I should dismiss this bill, but in view of the rule now obtaining in this circuit, I deny the motion, comforting my predelictions with the reflection that in a delicately balanced case involving an unadjudicated patent a preliminary injunction will probably not be granted, and that therefore the defendant will probably be left at large until the suit comes on for trial and the rights of the parties are finally determined some years from now.

An order denying the motion may be presented for signature on two days' notice.